UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00215-H

TERRY LEWIS                                                            PLAINTIFF

V.

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

The matter presently before the Court is Plaintiff, Terry Lewis's motion for judgment on the administrative record. Lewis brought this action pursuant to 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking judicial review of Defendant, Liberty Life Assurance Company of Boston's ("Liberty") decision to deny her claim for Waiver of Premium ("WOP") benefits. For the following reasons, the Court will deny Lewis' motion and remand her claim to Liberty for reconsideration consistent with this opinion.

I.

On September 25, 2010, Lewis, a 56-year-old female, left work at University Medical Center, Inc. due to health issues. Her documented medical conditions are, *inter alia*, as follows: diabetes mellitus type II, chronic pain, degenerative joint disease, degenerative disc disease, myofascial pain syndrome, morbid obesity, obstructive sleep apnea, peripheral polyneuropathy, physical deconditioning, right knee osteoarthritis, and hyperparathyroidism. Lewis formally applied for WOP benefits on January 24, 2011, submitting the requisite documentation and approximately 361 pages of medical records. Lewis' medical records spanned back to 2009,

1

approximately the time when she converted from a non-insulin dependent diabetic to an insulin-requiring diabetic. Administrative Record ("AR") 876.

In early March 2011, Liberty informed Lewis that it had received her WOP benefits application. Liberty asked Lewis and her primary treating physician, Dr. Brian Heimer to fill out additional forms. Based on his clinical experience, direct observation of Lewis and her self-report, Dr. Heimer completed Liberty's forms. In one form, the "Attending Physician's Statement," Dr. Heimer listed Lewis' medical conditions and their severity. He noted a "Class 5" impairment, which indicates "severe limitation of functional capacity: capable of minimum activity." AR 214-15. In the "Restrictions Form," Dr. Heimer again provided his medical diagnosis of Lewis and indicated that she was incapable of any work capacity, including sedentary work. AR 216. Additionally, in the "Assessment of Capacity" form, he indicated that most of her physical capacities, like standing and walking, were limited. He further stated that such restrictions were "lifetime" and that it was "not possible" for Lewis to "function in an occupational setting." AR 217. Lewis filed for WOP benefits under her health insurance policy.

The Group Life Insurance Policy at issue (the "Policy") is an employee welfare benefit plan governed by ERISA. Lewis' employer, University Medical Center, sponsors the Policy and Liberty administers it. Under the Policy's provisions, Liberty is obligated to pay certain WOP benefits if Lewis is deemed to be continuously disabled for a six-month period following her last day of active employment. Pursuant to the Policy, to obtain WOP benefits, a "covered employee" is required to provide Liberty with proof that she is "totally disabled" for the relevant time period. AR 24. The Policy defines "total disability" and "totally disabled" as "the complete inability, as a result of Injury or Sickness, to perform the Material and Substantial Duties of Any Occupation." AR 24. The Policy further defines "material and substantial duties"

2

as "responsibilities that are normally required to perform Any Occupation and cannot be reasonably eliminated or modified." AR 24. "Any occupation" is one "that the Covered Employee is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity." AR 25.

On May 13, 2011, Liberty denied Lewis' claim for WOP benefits, concluding that Lewis was not "totally disabled" under the Policy. Liberty reached this conclusion based primarily on a report prepared by its consulting physician, Dr. Frederic H. Schwartz. Liberty requested Dr. Schwartz conduct a review of Lewis' claim file. In his preparation of the report, Dr. Schwartz contacted Dr. Heimer via phone to discuss Lewis' current clinical status and ability to work. There is a disagreement between the parties as to what the two physicians precisely discussed. Liberty alleges that in an April 12, 2011 phone call, Dr. Heimer stated to Dr. Schwartz that Lewis was physically able to return to work. Additionally, the parties disagree whether Dr. Heimer intimated that Lewis' primary impairing diagnosis was major depression. Dr. Heimer maintains that he never stated Lewis was able to work or that depression was her most impairing diagnosis.[1] Based on his analysis, Dr. Schwartz advised Liberty that he found "no physical condition, alone or in combination, that would preclude the insured from performing the required tasks of a sedentary, light, or medium duty occupation on a full time basis." AR 184.

Lewis appealed this decision on October 20, 2011. In support of her appeal, Lewis submitted updated medical records from Dr. Heimer, her own video statement, and a vocational opinion report. Further, Lewis included a sworn deposition statement from Dr. Heimer. In the deposition, Dr. Heimer goes to great length to refute Dr. Schwartz's report, specifically noting

---

[1] To the extent the parties disagree on the particulars of the conversation, it not material and does not affect the disposition of the Court's decision. There is also a dispute as to whether Liberty or Dr. Schwartz received the official "Restrictions Form" from Dr. Heimer. Again, that issue has no bearing on the outcome of this motion.

3

each area of disagreement between the parties. He maintains that due to physical and cognitive limitations, Lewis is unable to perform any type of sedentary work. Again, he lists the observed and diagnosed impairments of Lewis and notes that not one condition, but rather the severity of each and their particular cumulative effect prevented her from ably working. *See* AR 84 (stating that "I think that rather than just take individual conditions and rate them individually, it is the sum total of all her medical problems that can be related as severe"). He also suggests that her medications, such as Hydrocodone, could materially affect her ability to maintain attention and concentration, and likely aggravate her fatigue.

On December 23, 2011, after re-evaluating Lewis' previously submitted information and considering new information like an independent peer physical report, a vocational consultant report and updated medical records from Dr. Heimer, Liberty again concluded that Lewis was not "totally disabled" as defined by the Policy. Liberty's decision to uphold its initial denial of disability benefits was principally informed by Dr. Greg G. Marella's Peer Review Report. In his Report, Dr. Marella substantiates most of Dr. Heimer's diagnoses as being supported by objective, medical evidence in the file. AR 57. Although he neither spoke directly with Dr. Heimer nor examined Lewis, Dr. Marella reviewed Dr. Heimer's deposition statement. Dr. Marella concluded that Lewis has no physical condition that precluded her from "performing . . . sedentary, light or medium duty occupation." AR 47. In addition, a vocational consultant reviewed Lewis' file for a transferrable skills analysis. Bernadette S. Cook, who performed the assessment, relied on Dr. Marella's description of Lewis' physical capabilities. In her Report, she reviewed the applicable provisions of the Policy and concluded that Lewis was fit for a number of entry level positions on a part-time or full-time basis.

Liberty's final denial letter also informed Lewis of her right to bring suit under ERISA. Thereafter, Lewis filed this action seeking judicial review of Liberty's denial of her claim for WOP benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Lewis has now moved for judgment on the administrative record, arguing that Liberty's decision to deny WOP benefits was arbitrary and capricious, and that the administrative record supports a finding that Lewis was "totally disabled" for the applicable time period.

## II.

It is well-settled that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 506 (6th Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "When such authority is granted, the highly deferential arbitrary and capricious standard of review is appropriate." *Id.* (quoting *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998)). Lewis does not dispute that the Policy expressly grants Liberty discretionary authority to make all decisions regarding eligibility and entitlement to benefits. *See* AR 34 (stating that "Liberty shall possess the authority in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding"). Accordingly, the Court will review Lewis' claim under the arbitrary and capricious standard.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Courts must decide whether the plan administrator's decision was rational in light of the plan's provisions.

5

Stated differently, when it is possible to offer a reasoned explanation based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal citations and quotations omitted). Notwithstanding this deferential standard of review, a reviewing court should not merely "rubber stamp a plan administrator's decision." *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (internal quotation omitted). Rather, "a court must review the quantity and quality of the medical evidence on each side." *Id.*; *see McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (stating that without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence—no matter how obscure or untrustworthy—to support a denial of a claim for ERISA benefits").

As part of its arbitrary and capricious review, the Court considers the inherent conflict of interest in allowing Liberty to make determinations as to Lewis' disability claim. It is undisputed that Liberty is both the payor of WOP benefits and the administrator vested with discretion to determine her eligibility for these benefits. Although this conflict is present, it does not dictate a more exacting standard of review. *Life Ins. Co v. Glenn*, 554 U.S. 105, 116-17 (2008). Rather, the court considers it as one factor in its arbitrary and capricious analysis. *Id.* at 112. *See Schwalm*, 626 F.3d at 311-12 (stating that "such a conflict is a red flag that may trigger a somewhat more searching review of a plan administrator's decision, but the arbitrary and capricious standard remains in place").[2]

Lastly, the Court notes that its review is limited to the administrative record. *See Schwalm*, 626 F.3d at 308 ("A court may consider only that evidence presented to the plan

---

[2] Lewis has failed to present any evidence that Liberty's claim determination was improperly influenced by the inherent conflict of interest.

administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms.").

### III.

Lewis contends that Liberty's decision that she is not eligible for WOP benefits was arbitrary and capricious because Liberty did not conduct a full and fair review of her claim. Her objections can be categorized as follows: it was arbitrary and capricious to (1) deny WOP benefits based on a file reviewer's assessment of credibility; (2) deny WOP benefits based on misrepresentations of peer to peer interactions; (3) reverse engineer a decision to deny WOP benefits; (4) selectively review, or altogether overlook, the Policy terms and evidence in reaching a claim determination; (5) rely on Dr. Marella's Report, which reflects bias and conflict of interest; and (6) withhold the Social Security Administration's determination of disability and Dr. Heimer's initial disability forms from reviewing physicians. Lewis also makes several procedural objections as to whether Liberty complied with ERISA's statutory and regulatory notice provisions.

Lewis' primary objection appears to be that Liberty improperly relied on the opinions of their reviewing physicians concerning her subjective complaints of pain. Lewis contends that Liberty should have performed a physical exam to inform its WOP benefits determination rather than perform a mere file review.

"A file review of a benefits decision is not inherently objectionable if performed by a qualified medical professional." *Phillips v. Life. Ins. Co. of N. Am.*, 2011 WL 4435670, *9 (W.D. Ky. Sept. 22, 2011) (citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005)). However, "where the administrator forgoes a physical examination, questions may be raised concerning the accuracy of the benefits decision." *Id.* Specifically, the Sixth Circuit recognizes

7

that "the failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert*, 409 F.3d at 295; *Bell v. Ameritech Sickness & Acc. Disability Ben. Plan*, 399 F. App'x 991, 1000 (6th Cir. 2010). This occurs more so when "conclusions from [the] review include critical credibility determinations regarding a claimant's medical history and symptomology." *Id.* at 297 n.6.

Here, the Plan explicitly reserved the right to conduct a physical exam. *See* AR 33 (stating that "Liberty, at its own expense, has the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Liberty"). Liberty is permitted to rely on a file review in its decision to award benefits; however, it nonetheless had the ability to order an in-person physical exam and chose not to. This decision is problematic given that some of Lewis' most disabling conditions and their severity are fundamentally subjective.

Lewis claims that she is unable to work primarily due to severe and persistent pain. Dr. Marella did not necessarily outright dismiss Lewis' claim to debilitating pain. He does note that Lewis' pain related to conditions including peripheral polyneuropathy, myofascial pain, spondylosis at C4-C6, degenerative joint disease in the cervical spine and tri-compartmental osteoarthritis of the knee. However, he makes a credibility determination as to the severity of Lewis' pain without the benefit of physically examining her. He states that "[m]illions of patients have pain and continue to work in a modified aspect of their job or find a new one." AR 57; *see Calvert*, 450 F. 3d at 263 (holding that the administrator's statement, "[p]ain is a subjective complaint and often times is out of proportion to physical findings" was too general, and simply indicated to the Court that the administrator did not believe plaintiff's pain to be

credible). While this may be generally true, without having physically examined Lewis, such a dismissive statement cannot be a basis for negating the severity of her pain. *See Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 296-97 (6th Cir. 2006) ("[W]e consider CCC's decision to *not* require an examination as part of the arbitrary and capacious review, especially because Kaplan made credibility determinations concerning Smith's subjective complaints. . . . Their decision to not perform this examination supports the finding that their determination was arbitrary."); *cf. Hodges v. Am. Heritage Life Ins. Co.*, 2008 WL 2117139, *7 (W.D. Ky. May 19, 2008) (upholding the denial of benefits because, "[u]nlike the administrator's in *Smith* and *Platt*, [the administrator] ordered [the plaintiff] to undergo a functional capacity evaluation").

Dr. Marella's Report also states that in his opinion, "even without being a malingerer, she may have other reasons she feels she cannot return to work and these may not be factual or accurate." AR 57. That statement implies that Lewis is feigning her illnesses, or worse, being outright deceitful about her conditions. Although various tests and office notes confirm some element of pain, these documents cannot conclusively qualify the extent of her conditions. Dr. Marella's Report references the fact that Lewis' medical records do mention pain, fatigue, weakness or neuropathy seldomly, but that he admittedly could not decipher some of Dr. Heimer's entries. AR 58. As this situation illustrates, Liberty could have performed a physical examination itself to more accurately assess the magnitude of her pain and whether it substantially impaired her ability to work. It chose not to, and instead made its own determination as to the severity of her symptoms based on a review of medical records that Dr. Marella found difficult to read. That necessarily involved a credibility determination.

Another dispute between the parties possibly involving a credibility determination is the severity of Lewis' diabetes and how it, if at all, hampers her ability to work. Dr. Heimer

9

maintains that Lewis' insulin-dependent diabetes had an aggravating effect on a number of Lewis' other medical conditions, and "it's the sum total of all her medical problems that can be related as severe." AR 84. However, Dr. Marella, in his review of the paper record, did not find Lewis' diabetes to be as disabling, stating that "[m]illions of patients have diabetes and very few require any degree of work restrictions." AR 58; *see Mullins v. Prudential Ins. Co. of Am.*, 2011 WL 2295265, *11 (W.D. Ky. 2011) (stating that the administrator's "decision to rely solely on a file review when faced with [] conflicting evidence [] lends weight to [plaintiff's] argument that he did not receive a full and fair review of his claim"). Without the benefit of physically examining Lewis, Dr. Marella may have made a credibility determination regarding the effects of her insulin dependent diabetes.

In sum, Liberty's file review involved a credibility determination as to Lewis' subjective complaints. *See id.* at *11 (stating that an administrator that similarly reserved the right to a physical examination but chose not to had to judge plaintiff's credibility in determining whether the pain in his back and neck constituted a disability as defined by the benefits plan). In its thorough review of the administrative record, the Court cannot single out objective medical evidence on which Liberty relies in its denial of benefits that does not involve some material element of a credibility determination. *Cf. Phillips*, 2011 WL 4435670, at *9 ("Their opinions are reasonably linked to the lack of objective medical evidence in the record about Phillip's disability during the Benefits Waiting Period and therefore were not arbitrary and capricious.").

IV.

The court need not address Lewis' other objections as her first argument warrants remand. Based on the record, Liberty did not afford Lewis' claim for WOP benefits a full and fair review, and its determination was arbitrary and capricious. Though the Court finds that

Liberty's methodology was arbitrary and capricious, the Court is hesitant to find that Lewis is indeed entitled to WOP benefits. Given the record before the Court, it is unclear whether Lewis was "totally disabled" for the relevant time period; Dr. Heimer and Liberty's reviewing physicians are not in total agreement as to the severity of Lewis' physical limitations or the degree to which she may be able to work. The Court finds that the proper remedy in this situation is to remand the case to Liberty, the claims administrator, for a full and fair review. *See Helfman v. GE Grp Life Assur. Co.*, 573 F.3d 383, 396 (6th Cir. 2009) ("Where the problem is with the integrity .of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled remand to the plan administrator is the appropriate remedy.") (internal quotation omitted).

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for judgment on the administrative record is DENIED.

IT IS FURTHER ORDERED that this matter is REMANDED to Defendant for a full and fair review in accordance with this Memorandum Opinion.

This is a final order.

cc:   Counsel of Record